IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTOPHER GARZA,<br><br>              Petitioner,<br><br>vs.<br><br>SCOTT R. FRAKES, Director, Nebraska<br>Department of Correctional Services,<br><br>              Respondent. | **8:17CV474**<br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court on Christopher Garza's ("Garza") Petition for Writ of Habeas Corpus ("petition") under 28 U.S.C. § 2254 (Filing No. 1). Garza, an inmate at the Tecumseh State Correctional Institution in Nebraska, contends "he is being held in violation of the Eighth Amendment's ban on cruel and unusual punishment because he was a minor at the time of his offense and was sentenced to a de facto life sentence without a finding of irreparable corruption." Respondent Scott R. Frakes, Director of the Nebraska Department of Correctional Services, requests that the Court deny the petition with prejudice without an evidentiary hearing. For the reasons given below, Garza's petition is denied and this case is dismissed with prejudice.

I.  **BACKGROUND**[1]

On March 21, 1990, high-school senior Christina O'Day ("O'Day") was brutally raped and murdered while she babysat an eight-year-old little girl. Before she died, O'Day suffered numerous injuries at the hands of her killer while the little girl listened from another room. O'Day was tied up, beaten, strangled, and cut with a knife over the course of three hours. The coroner determined any one of three harms could each have

---

[1]The tragic facts in this case are described in gruesome detail in *State v. Garza*, 888 N.W.2d 526, 528-35 (Neb. 2016). This background is primarily drawn from those facts.

caused O'Day's death—strangulation, asphyxiation, and bleeding to death from a deep laceration to her right wrist.

At trial, Wayne K. Brewer ("Brewer"), a friend of Garza's, testified he and Garza broke into the home where O'Day was babysitting ostensibly to steal from her employer. Garza knew O'Day from school and claimed to have dated her. While Brewer was looking for things to steal, he saw Garza and O'Day enter the little girl's room and tell her to go back to sleep. Later, Garza came downstairs and told Brewer, "Go have some fun." According to Brewer, he originally refused but eventually went to O'Day's bedroom and found her on the bed bound and gagged. Brewer claims he briefly sexually assaulted O'Day and then went back downstairs. Brewer testified Garza returned to the bedroom and later retrieved a fourteen-inch knife from the kitchen. Brewer witnessed Garza cut O'Day with the knife before he and Garza left with the stolen items and O'Day's car. They left her to die.

Testifying on his own behalf, Garza denied Brewer's horrific account. Although he had previously told police that he had been at the house and had sexual intercourse with O'Day, but that Brewer killed her, at trial, Garza denied going to the house with Brewer. By Garza's account, he was with Brewer earlier that night but dropped him off at his house and went home to bed. Garza testified that when he learned O'Day had been killed, he asked Brewer about it and Brewer confessed. The jury rejected Garza's story.

On January 18, 1991, the jury convicted Garza of first-degree (felony) murder and use of a knife to commit a felony. Garza, who was sixteen at the time of the offense, received a mandatory life sentence without the possibility of parole for the murder conviction and received a consecutive sentence of 6 2/3 to 20 years for the weapon conviction. Brewer, who was eighteen at the time of the offense, received a life sentence. The Nebraska Supreme Court affirmed Garza's convictions and sentences on direct appeal. *State v. Garza*, 492 N.W.2d 32, 50 (Neb. 1992).

In 2012, the United States Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller v. Alabama*, 567 U.S. 460, 479 (2012). The court expressly declined to consider the "alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles." *Id.* The court nevertheless opined it would expect such sentences would be "uncommon," particularly because of "the great difficulty . . . of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Id.* at 479-80 (quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2005), and *Graham v. Florida*, 560 U.S. 48, 68 (2010)).

After the Nebraska Supreme Court determined *Miller* applied retroactively, *see State v. Mantich*, 842 N.W.2d 716, 731 (Neb. 2014); *accord Montgomery v. Louisiana*, 577 U.S. \_\_\_, \_\_\_, 136 S. Ct. 718, 736 (2016), Garza's sentencing judge granted his request for post-conviction relief and held a comprehensive resentencing hearing. *Garza*, 888 N.W.2d at 534-35. Garza admitted "participat[ing] in the robbery, rape, and murder of" O'Day and expressed remorse for his crimes. *Id.* at 533. Upon reviewing the trial transcript and exhibits, police reports, an updated presentence report, letters submitted to the court, and Garza's mitigation evidence, the judge credited Garza's efforts at rehabilitation but stated he had to balance those efforts against the nature of his offense and what he had done to O'Day. *Id.* The judge then sentenced Garza to 90 to 90 years on the murder conviction and 6 2/3 to 20 years for the weapon conviction to run consecutively. Unless Garza loses good-time credit, he will be eligible for parole after forty-eight years and four months and will be mandatorily discharged upon serving fifty-five years. *Id.*

Garza timely appealed his sentence to the Nebraska Supreme Court, arguing his sentence was excessive and violated his constitutional rights. *Id.* at 534-35. More precisely, Garza argued his sentence for murder amounted to a "de facto life sentence" in

3

violation of his constitutional rights because he would not be eligible for parole until he is sixty-four[2] years old and will not complete his sentence until he is seventy-one. *Id.* at 535. Garza also argued that in sentencing him on the murder conviction, the judge failed to make a specific finding Garza was the "rare juvenile offender whose crime reflects irreparable corruption" described in *Miller*. *Id.*

The Nebraska Supreme Court rejected Garza's arguments and affirmed his sentences. *Id.* The court concluded "Garza's characterization of his sentence as a 'de facto life sentence' [was] immaterial" because *Miller* allowed a juvenile offender to be sentenced to life without parole. *Id.* The court also found "no merit to his argument that" *Miller* and its progeny required "the sentencing court . . . to make a specific finding of 'irreparable corruption.'" *Id.* The court explained any such rule from *Miller* did not apply because unlike the juvenile offenders in those cases, who were "sentenced, or resentenced to life imprisonment without parole," Garza "was resentenced to a term of years and is eligible for parole" under Nebraska law. *Id.* at 535-36. In the court's view, "[t]he requirements of *Miller* were met when Garza was resentenced." *Id.* at 536.

Garza petitioned the United States Supreme Court for a writ of certiorari, which was denied on October 2, 2017. *Garza v. Nebraska*, ___ U.S. ___, 138 S. Ct. 83 (2017). Garza now petitions this Court for a writ of habeas corpus, alleging (as he did in his petition for a writ of certiorari) that his sentence to a term of years is cruel and unusual punishment in violation of the Eighth Amendment. *See* 28 U.S.C. § 2254(a).

## II. DISCUSSION
### A. Standard of Review

Garza's petition for habeas relief is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (1996). Under AEDPA's "highly deferential standard for evaluating state-court rulings,"

---

[2] At other times, Garza says sixty-five. It makes no difference.

*Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), this Court cannot grant Garza relief unless the Nebraska Supreme Court's adjudication of his Eighth Amendment claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented" in state court. 28 U.S.C. § 2254(d). The "phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is "contrary to" clearly established Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-13. A state court's application of the Supreme Court's clearly established precedent is "unreasonable" if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

This standard is—as Congress intended—"difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). An unreasonable application of the Supreme Court's "holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. ___, ___, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). To prevail, Garza "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Garza's petition does not meet this exacting standard.

### B. Garza's Eighth Amendment Claim

As sole grounds for his petition, Garza contends "he is being held in violation of the Eighth Amendment's ban on cruel and unusual punishment as he was a minor at the time of the offense and was sentenced to a de facto life sentence without a finding of irreparable corruption." Garza's entire petition is predicated on his assertion that his sentence to a term of years "amounts to a life sentence" because—even though parole is possible—he will not be eligible until he is sixty-four. Garza bases that assertion on a handful of state-court decisions. *See State v. Zuber*, 152 A.3d 197, 212, (N.J. 2017); *Casiano v. Comm'r of Correction*, 115 A.3d 1031, 1036 (Conn. 2015); *State v. Ronquillo*, 361 P.3d 779, 784 (Wash. Ct. App. 2015).

Garza, however, is unable to cite to any Supreme Court authority clearly holding that a discretionary sentence like his—a term of years for murder with the possibility of parole within his lifetime—is equivalent to a life sentence without the possibility of parole and is cruel and unusual punishment in violation of the Eighth Amendment. *See, e.g.*, *Lockyer*, 538 U.S. at 72 (noting the Supreme Court "has not established a clear or consistent path for courts to follow" "in determining whether a particular sentence for a term of years can violate the Eighth Amendment"). To the contrary, in *Lockyer*, the Supreme Court rejected a criminal defendant's claim that the state court's conclusion that a sentence of two consecutive terms of twenty-five years to life did not violate the Eighth Amendment was contrary to or an unreasonable application of clearly established federal law. *Id.* at 73-75. In upholding the sentence, the *Lockyer* Court determined the defendant's sentence was materially distinguishable from a Supreme Court case involving a life sentence without the possibility of parole because the defendant was eligible for parole, *id.* at 74, even though he would not be eligible until he was eighty-seven years old, *id.* at 79 (Souter, J., dissenting).

The same is true here. Not only is Garza parole eligible in his lifetime, he did not even receive a life sentence. Garza points to *Miller* and *Montgomery* as support for his

6

Eighth Amendment claim, but neither of those cases said anything about "de facto life sentences" or otherwise addressed the narrow issue on which Garza's petition depends. *See Miller*, 567 U.S. at 479 (prohibiting sentencing schemes that mandate "life in prison without possibility of parole for juvenile offenders"); *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732 (holding "*Miller*'s prohibition on mandatory life without parole for juvenile offenders" applied retroactively to cases on collateral review); *In re Harrell*, No. 16-1048, 2016 WL 4708184, at *2 (6th Cir. Sept. 8, 2016) (concluding "the rule on which [the defendant] relie[d]—that the functional equivalent of life without parole is unconstitutional—is not the rule established in *Miller* and made retroactive in *Montgomery*" because those cases "apply, by their own terms, only to mandatory sentences of life without parole").

As yet, "the Supreme Court has not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life." *Starks v. Easterling*, 659 F. App'x 277, 280 (6th Cir. 2016) (unpublished), *cert. denied*, 137 S. Ct. 819, 196 L. Ed. 2d 605 (2017). Both *Miller* and *Montgomery* were expressly premised on the severity of sentencing a juvenile to *life in prison without the possibility of parole*. *See Montgomery*, 577 U.S. at ___, 136 S. Ct. at 732-35 (describing life without parole as "the harshest possible penalty for juveniles" (quoting *Miller*, 567 U.S. at 489)). In *Miller*, the Supreme Court drew a clear distinction between life in prison without parole and lesser sentences like "life *with* the possibility of parole" "or a lengthy term of years." *Miller*, 567 U.S. at 465, 489.

On resentencing after *Miller*, Garza was not—as prohibited by *Miller*—sentenced to life in prison without the possibility of parole pursuant to a mandatory sentencing scheme that did not give the sentencing judge discretion to consider mitigating circumstances. Garza was resentenced to a term of years after a comprehensive hearing that included mitigation evidence and will be eligible for parole when he is sixty-four. The Supreme Court simply has not extended the rule of *Miller* and *Montgomery* to a

7

sentence like Garza's.  *Cf. United States v. Jefferson*, 816 F.3d 1016, 1019 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2290 (2017) (joining several other circuits in refusing to extend the holding of *Miller* to discretionary life sentences and declining to consider the defendant's argument that *Miller* applied to his 600-month "*de facto* life sentence"); *Bell v. Uribe*, 748 F.3d 857, 869 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1545 (2015) (finding no *Miller* violation where the juvenile offender was sentenced to life in prison without the possibility of parole because the sentencing judge "consider[ed] both mitigating and aggravating factors under a sentencing scheme that afford[ed] discretion and leniency").

Indeed, in *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 736, the Supreme Court explained a state could "remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole."  "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."  *Id.*; *see also Miller*, 567 U.S. at 479 ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" (quoting *Graham v. Florida*, 560 U.S. 48, 75 (2010))).  That is precisely what happened when Garza was resentenced.

The Nebraska Supreme Court's thorough opinion and determination that Garza's sentence to a term of years with the possibility of parole in his lifetime does not run afoul of the constitutional principles announced in *Miller* and *Montgomery* is neither objectively unreasonable nor "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court."  *Id.* at 101 (first alteration in original) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Garza is not entitled to habeas relief.

### C. Certificate of Appealability

"[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). Before he can take an appeal, the petitioner must have a certificate of appealability. *Id.* at 336; Fed. R. App. P. 22(b). This Court cannot grant such a certificate unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make that showing, Garza "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Garza has not made that showing.

Based on the foregoing,

IT IS ORDERED:
1. Christopher Garza's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Filing No. 1) is denied.
2. This case is dismissed with prejudice.
3. A certificate of appealability is denied.
4. A separate judgment shall be entered in this case.

Dated this 9th day of April, 2018.

            BY THE COURT:

            *Robert F. Rossiter, Jr.*
            Robert F. Rossiter, Jr.
            United States District Judge